UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| DANNY L. HADAWAY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 2:05-CR-98-JRG-1 |
| | ) | 2:14-CV-186-JRG |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

Before the Court is Petitioner's supplemented motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docs. 29, 33, 43].[1] He bases the request on *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), was unconstitutionally vague [*Id.*]. The United States responded in opposition on June 3, 2016 [Doc. 45]. Petitioner did not reply and the time for doing so has now passed. E.D. Tenn. L.R. 7.1, 7.2. For the reasons that follow, the supplemented § 2255 petition will be **DENIED** and **DISMISSED WITH PREJUDICE**.

**I.    BACKGROUND**

In 2006, Petitioner pled guilty, pursuant to a Rule 11(c)(1)(C) plea agreement, to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1) [Doc. 14]. Petitioner had

---

[1]    Petitioner, through counsel, submitted an original § 2255 petition challenging his armed career criminal designation based on *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013) [Doc. 29]. He submitted an amended version of the same shortly thereafter [Doc. 33]. On February 11, 2016, this Court appointed Federal Defender Services of Eastern Tennessee ("FDSET") for the limited purpose of reviewing the case to determine whether or not Petitioner is eligible for collateral relief based on *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* E.D. Tenn. SO-16-02 (Feb. 11, 2016). Consistent with that appointment, FDSET filed a second amended petition challenging Petitioner's sentence based on the *Johnson* decision [Doc. 43].

several prior Tennessee convictions at the time of his offense, including: a 1979 conviction for voluntary manslaughter [Presentence Investigation Report (PSR) ¶ 25], a 1987 conviction for aggravated assault [*Id.* ¶ 30]; and a 1993 conviction for aggravated assault [*Id.* ¶ 33]. Petitioner agreed in his plea agreement that these three offenses made him an armed career criminal subject to the ACCA's fifteen-year term of imprisonment [Doc. 14]. In accordance with that designation and the terms of Petitioner's Rule 11(c)(1)(C) plea, this Court sentenced Petitioner to 180 months' imprisonment on April 26, 2006 [Doc. 27]. Petitioner did not appeal his conviction or sentence.

Eight years later, Petitioner filed an original § 2255 motion challenging his armed career criminal designation based on *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013) [Doc. 29]. He submitted an amended version of the same shortly thereafter [Doc. 33]. The Supreme Court decided *Johnson* on June 26, 2015 and, on May 6, 2016, Petitioner submitted a second amended motion challenging his armed career criminal designation based on that decision [Doc. 43].

## II. STANDARD OF REVIEW

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the

proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

### III. ANALYSIS

The supplemented petition contains a single ground, arguing that the 1979 voluntary manslaughter and 1987 aggravated assault convictions no longer qualify as "violent felonies" under § 924(e) after *Descamps* and *Johnson* and that, without those convictions, Petitioner does not qualify for ACCA enhancement [Docs. 29, 33, 43 (challenging ACCA designation)].

#### A. Propriety of Armed Career Criminal Designation After the *Johnson* Decision

The ACCA mandates a fifteen-year sentence for any felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1) (emphasis added). The provision defines "serious drug offense" as any "offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). The Act goes on to define "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-physical-force clause"); (2) "is burglary, arson, or extortion, involves the use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another" (the "residual clause"). 18 U.S.C. § 924(e)(2)(B). Only the third portion of the above definition—the residual clause—was held to be unconstitutionally vague by the Supreme Court in the *Johnson* decision. 135 S. Ct. at 2563. The Court went on to make clear, however, that its decision did not call into question the

remainder of the ACCA's definition of violent felony—the use-of-physical-force and enumerated-offense clauses. *Id.*; *United States v. Priddy*, 808 F.3d 676, 682–83 (6th Cir. 2015). Nor does *Johnson* disrupt the use of prior serious drug offenses as an independent form of ACCA predicate conviction. *See, e.g.*, *United States v. Smith*, No. 10-CR-20058, 2015 WL 5729114, at *9–13 (E.D. Mich. Sept. 20, 2015) (noting that *Johnson* does not affect a defendant's categorization as an armed career criminal based on his or her prior serious drug offenses).

Petitioner does not dispute that his 1993 conviction for aggravated assault remains a predicate offense under the ACCA. As such, the sole dispute between the parties is whether or not his 1979 voluntary manslaughter and 1987 aggravated assault convictions remain "violent felonies" under one of the unaffected provisions of § 924(e)(2)(B). *See, e.g.*, *United States v. Ozier*, 796 F.3d 597, 604 (6th Cir. 2015) (denying petition where convictions qualified as a predicates independent of the residual clause), *overturned on other grounds by Mathis v. United States*, 136 S. Ct. 2246, 2251 n.1 (2016). For the reasons that follow, the Court finds that they do.[2]

### 1.  Categorical and Modified Categorical Approaches

---

[2] The government attempts to rely on the waiver provision of Petitioner's plea agreement as an alternative, independent basis for denying relief [Doc. 45 p. 4]. While the Court recognizes that Petitioner "knowingly and voluntarily waive[d] the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 or to collaterally attack the [his] conviction and/or resulting sentence" except in cases that involve "ineffective assistance of counsel or prosecutorial misconduct" [Doc. 14], it is far from clear that such waiver can be enforced to bar him from challenging a sentence under the circumstances present in the instant case. *See e.g.*, *United States v. Thompson*, No. 3:06-cr-56, 2008 WL 6506506, at *14 (W.D. Ky. Nov. 7, 2008) (explaining knowing and voluntary waivers are enforceable so long as they do not result in a miscarriage of justice and that a miscarriage of justice arises where "the sentence imposed exceed[s] the statutory maximum permissible"). The Court finds that it need not resolve this dispute here, however, because Petitioner has failed to show that his sentence was imposed in violation of the laws of the United States.

To determine whether Petitioner's convictions for voluntary manslaughter and aggravated assault remain violent felonies after *Descamps* and *Johnson*, the Court needs to identify the precise crimes of conviction. *Descamps*, 133 S. Ct. at 2285. To do so, it must employ a "categorical approach," under which it looks "only to the statutory definitions—elements—of a defendant's prior offense, and not to the particular facts underlying [each individual] conviction[]." *Id.* at 2283 (internal quotations omitted). If the statute categorically aligns with the generic version of the offense, the inquiry is over. If, however, the statute criminalizes conduct in excess of that covered by the enumerated-offense clause, it becomes necessary to determine whether the statute is divisible or indivisible. A divisible statute is one that comprises multiple crimes, alternative sets of elements. *Id.* at 2281. An indivisible statute is one that contains a single crime, lone set of indivisible elements. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

When faced with a divisible statute, the Court can resort to the "modified categorical approach," i.e., consult "a limited class of documents, such as indictments and jury instructions, to determine which alternative [set of elements] formed the basis of the defendant's prior conviction." *Id.* at 2281. "[T]he job . . . of the modified approach [is only] to identify, from among several alternatives, the crime of conviction so that the court can" determine whether that variant of the offense qualifies as a violent felony under the ACCA's definition of violent felony. *Id.* at 2285. Because the categorical and modified approaches are concerned with elements and not "facts underlying [any particular] conviction," *id.* at 2285, the Court is prohibited from using either approach to distinguish between alternative means for satisfying a single indivisible element. *Mathis*, 136 S. Ct. at 2253–54. Thus, it is important to distinguish between divisible provisions to which the Court can apply the modified approach and indivisible provisions to

5

which it cannot. Convictions under an overly broad indivisible provision are incapable of serving as predicates.[3]

## 2. Status of 1979 Voluntary Manslaughter Conviction

Because voluntary manslaughter is not one of the offenses enumerated in § 924(e)(B)(2)(ii), its status as a violent felony depends on § 924(e)(B)(2)(i), i.e., the use-of-physical-force clause. For purposes of that provision, "the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 130 S. Ct. 1265, 1271 (2010). At the time that Petitioner committed the offense, the Tennessee Supreme Court defined voluntary manslaughter as follows:

> Prior to November 1, 1989, the effective date of Tennessee's comprehensive revision of the criminal code, Tennessee law provided that an unlawful killing "with malice aforethought, either express or implied," constituted the offense of murder. Tenn. Code Ann. § 39-2-201 (1982) [repealed]. If the murder was "perpetrated by means of poison, lying in wait, or by other kind of willful, deliberate, malicious and premeditated killing" or was committed during the commission of a felony, the killing constituted first-degree murder. *Id.* § 39-2-202(a) [repealed]. All other murders were deemed second-degree murder. *Id.* § 39-2-201(a) [repealed]. Under the pre 1989 criminal code, manslaughter was defined as "the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act." *Id.* § 39-2-221 [repealed]. In addition, case law stated that voluntary manslaughter was "the unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of an ordinary man, and thus negative malice." *Smith v. State*, 370 S.W.2d 543, 545 (Tenn. 1963).

---

[3] In *Mathis v. United States*, the Supreme Court held that: (1) a prior conviction does not qualify as a generic form of a predicate violent felony for purposes of the ACCA if an element of the crime of conviction is made broader than an element of the generic offense by way of an enumerated list of alternative factual means for satisfaction of the former; and (2) Iowa's burglary statute—which defines "structure" to include any building, structure, [or] land, water, or air vehicle"—had a broader locational component than generic burglary. 136 S. Ct. 2247–48, 53–54. Because the "structure" element of Iowa's burglary statute was broader than the parallel element of generic burglary, the Court concluded that the petitioner's prior convictions were incapable of supporting enhancement under the enumerated-offense clause. *Id.* at 2257.

*State v. Williams*, 38 S.W.3d 532, 536 (Tenn. 2001).

The above definition for manslaughter is divisible because it is listed in the disjunctive—voluntary upon a sudden heat or involuntary, but in the commission of some unlawful act. To the extent that Petitioner argues that the definition is indivisible because "the Tennessee Supreme Court define[s] the specific elements of voluntary manslaughter as a single . . . offense" [Doc. 43 p. 5], the Court disagrees. In fact, listing the elements of "voluntary manslaughter" does the opposite: it confirms that that offense is divisible, i.e., has distinct elements, from involuntary manslaughter. Petitioner's indictment and judgment demonstrate that the jury convicted him of the voluntary variant—unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of any ordinary man [Docs. 37-1 (charging Petitioner with "feloniously, willfully, deliberately, and with malice aforethought kill[ing]" another person), 37-2 (listing Petitioner's offense of conviction as "voluntary manslaughter")].

In *United States v. Anderson*, the Sixth Circuit held that the intentional killing of another person necessarily requires the use of force capable of causing physical pain or injury to another, i.e., violent physical force. *See* 695 F.3d 390, 400 (6th Cir. 2012) ("We hold that one can knowingly cause serious physical harm to another only by knowingly using force capable of causing physical pain or injury, i.e., violent physical force." (internal quotations omitted)); *see also United States v. Evans*, 699 F.3d 858, 863 (6th Cir. 2012) ("One can knowingly cause or attempt to cause physical harm—i.e., physical injury—to another only by knowingly using or attempting to use physical force—i.e., force capable of causing physical injury."). In light of the *Anderson* decision and because voluntary manslaughter by definition requires the intentional killing of another, the Court finds that Petitioner's 1979 manslaughter conviction categorically

qualifies as a violent felony under the ACCA's use-of-physical-force clause. *See Nelson v. State*, 65 Tenn. 418, 421(1873) (distinguishing involuntary manslaughter from voluntary manslaughter on the grounds that the former occurs "where it plainly appears that neither death or any bodily harm was intended, but death is accidentally caused by some unlawful act"); *see also United States v. Jackson*, No. 15-3982, 2016 WL 3619812, at *2 (6th Cir. July 1, 2016) (finding that Georgia voluntary manslaughter requires "proof that a person 'cause[d] the death of another human being under circumstances that would otherwise be murder," necessarily involves proof that the individual used force capable of causing physical pain or injury); *United States v. Collins*, 799 F.3d 554, 597 (6th Cir. 2015) ("[C]rimes which require proof of physical injury necessarily have 'as an element the use, attempted use, or threatened use of physical force against the person of another' and thus qualify as crimes of violence under the 'elements' clause of the ACCA.").

The Court is unpersuaded by Petitioner's reliance on *Capps v. State*, 478 S.W.2d 905 (Tenn. Crim. App. 1972), for the proposition that voluntary manslaughter is capable of commission without violence because Tennessee defined "passion" as "fear terror, excitement, or nervousness" instead of "force, anger, brutality, or frustration" [Doc. 43 pp. 6–7]. The Sixth Circuit explained in the *Anderson* decision that "it does not matter that [a] statute [which requires proof of serious physical injury] does not contain a stand-alone physical force element because proof of serious physical injury or pain under the statute necessarily requires proof of violent physical force." *Anderson*, 695 F.3d at 401; *see also United States v. Gloss*, 661 F.3d 317, 319 (6th Cir. 2011) ("Any robbery accomplished with a real or disguised deadly weapon, or that causes serious bodily injury, falls under the first clause of the definition of violent felony, as it necessarily involves 'the use, attempted use, or threatened use of physical force against the

8

person of another."); *United States v. Barnett*, 540 F. App'x 532, 536 (6th Cir. 2013) (finding that an Ohio domestic assault statute that did "not expressly include physical force as a stand-alone element" nevertheless qualified as a violent felony under the ACCA's use-of-physical-force clause because it required a defendant to "knowingly cause or attempt to cause physical harm to [another]"). To the extent that Petitioner argues force cannot exist without malice, he has failed to cite, and the Court is unaware of, any authority that might support that interpretation of violent physical force.

The Court is similarly unpersuaded by the block of cases that Petitioner cites in support of his argument that manslaughter is not a violent felony under the ACCA's use-of-physical-force clause [Doc. 43 p. 8]. As an initial matter, all of the cases cited dealt with involuntary manslaughter. *See United States v. Armijo*, 651 F.3d 1226, 1233 (10th Cir. 2011) (Colorado reckless manslaughter); *United States v. Culbertson*, 389 F. App'x 515, 518 (6th Cir. 2010) (Michigan manslaughter by operating a motor vehicle with gross negligence); *United States v. Woods*, 576 F.3d 400, 410 (7th Cir. 2009) (Illinois involuntary manslaughter); *United States v. Torres-Villalobos*, 487 F.3d 607, 614 (8th Cir. 2007) (Minnesota second-degree—i.e. negligent—manslaughter); *United States v. Walter*, 434 F.3d 30, 39 (1st Cir. 2006) (Massachusetts involuntary manslaughter); *United States v. Zabawa*, 134 F. App'x 60, 64-65 (6th Cir. 2005) (Michigan involuntary manslaughter). Further, none of the cases on which he relies applied the Sixth Circuit's use-of-physical-force clause analysis from the *Collins*, *Evans*, and *Anderson* decisions. *See Frazier v. United States*, No. 2:16-cv-16-JRG, 2017 WL 1103400, at *4–5 (E.D. Tenn. Mar. 23, 2017) (finding that a 1985 Tennessee voluntary manslaughter conviction remained a violent felony after *Descamps* and *Johnson* under the ACCA's use-of-physical-force clause).

### 3. Status of 1987 Aggravated Assault Conviction

At the time Petitioner committed the offense, Tennessee law provided that a person is guilty of aggravated assault if he or she:

(1) Attempts to cause or causes serious bodily injury to another willfully, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life;

(2) Attempts to cause or willfully or knowingly causes bodily injury to another with a deadly weapon;

(3) Assaults another while displaying a deadly weapon or while the victim knows such person has a deadly weapon in his possession; or

(4) Being the parent or custodian of a child or the custodian of an adult, willfully or knowingly fails or refuses to protect such children or adult from an aggravated assault described in (1), (2), or (3) above[.]

Tenn. Code Ann. § 39-2-101(b) (1986). Because aggravated assault is not listed as an enumerated offense in § 924(e)(2)(B)(ii), its status as a predicate depends on the use-of-physical-force clause.

Tennessee Code Annotated § 39-2-101(b) (1986) is divisible between subdivisions (1), (2), (3), and (4) because each of those variants is listed in the disjunctive and juries are required to agree on which aggravating circumstance applies, but not further divisible with regard to the levels of *mens rea*— intentional, knowing, or reckless—contained within the subdivisions.

Having determined the extent to which Tennessee Code Annotated § 39-2-101(b) (1986) is divisible, this Court's next step is to examine permissible *Shepard* documents with the goal of identifying the variant of aggravated assault for which Petitioner was convicted. Petitioner's state-court "waiver of jury trial and guilty plea" and "plea agreement" both list the offense as "assault on [another person]" without any additional detail [Doc. 43-1 pp. 1, 3; Doc. 43-2]. Petitioner's indictment lists multiple counts of assault, including one which appears to have

10

originally been listed as "count one" but then remarked as "count two" that charges Petitioner with "feloniously and knowingly caus[ing] bodily injury to [another person] with a deadly weapon, to wit: a pistol" and another which appears to have originally been listed as "count two" but then remarked as "count three" that charges Petitioner with "caus[ing] serious bodily injury to [another person], willfully, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life" [*Id.* at 5]. Finally, the courtroom minutes from Petitioner's plea hearing state: "[a]fter hearing the stipulation of facts the Court adjudges beyond a reasonable doubt that the defendant is guilty in Count Two of the indictment of aggravated assault" [Doc. 43-3].

Without citation to supporting authority, Petitioner argues that the Court cannot consider the information contained in his courtroom minutes because they are not one of the documents identified in *Shepard v. United States*, 544 U.S. 13 (2005), as an acceptable subject of examination under the modified categorical approach [Doc. 43 pp. 9–10]. Without that information, Petitioner argues that it is impossible to determine the variant of Tennessee Code Annotated § 39-2-101(b) (1986) under which he was convicted. [*Id.*]. In alternative, Petitioner argues that a lack of information about time and origin of the handwritten alterations to his indictment—changing original Count One to revised Count Two and original Count Two to revised Count Three—makes it unclear whether the minutes refer to the original or revised Count Two [*Id.*]. As a result of the foregoing ambiguity and the fact that Tennessee Code Annotated § 39-2-101(b)(1) criminalizes reckless conduct, Petitioner claims that his 1987 conviction no longer qualifies as a violent felony. Without that conviction, Petitioner argues that he is not an armed career criminal and that his sentence violates due process [*Id.*]. In response, the United States argues that Petitioner's courtroom minutes are an acceptable source of information, that

they make clear he was convicted of violating Tennessee Code Annotated § 39-2-101(b)(2), and that that offense categorically qualifies as a violent felony [Doc. 45 pp. 11–14].

After review of the parties arguments and authorities cited in support thereof, this Court agrees with the United States that the courtroom minutes from Petitioner's 1987 change of plea proceeding are a permissible subject of examination under the modified categorical approach. In *Shepard*, the Supreme Court provided examples of permissible sources of information when attempting to identify a defendant's prior crime of conviction, including:

> [T]he charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, *or to some comparable judicial record of this information*.

522 U.S. at 26 (emphasis added). "[C]ourt minutes are a judicial record entered on the state court's docket that summarize[] the criminal proceedings conducted by the state court." *United States v. Duhaney*, 594 F. App'x 573, 576 (11th Cir. 2014). The Tennessee Court of Appeals has held that "[n]o principle is better known than that which states that a Court speaks through its orders and decrees entered upon the minutes of the Court." *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977). It necessarily follows that the minutes from Petitioner's Cocke County Circuit Court change of plea hearing constitute a "comparable judicial record" of his plea and conviction under *Shepard*. *See Coronado v. Holder*, 759 F.3d 977, 985–86 (9th Cir. 2014) (concluding that a California court's certified electronic docket and the court minutes are "equally reliable to the documents approved in *Shepard*"); *United States v. Adkins*, 729 F.3d 559, 568 (6th Cir. 2013) (finding that Ohio state court journal entries effectively constitute a judgment of conviction and thus a "comparable judicial record" under *Shepard*); *Kwong v. Holder*, 671 F.3d 872, 879–80 (9th Cir. 2011) (explaining that California state court abstracts of judgment

and minute orders, which are statutorily authorized and contemporaneously prepared by a neutral officer of the court, are of "equal reliability" to the illustrative list of documents in *Shepard*); *see also United States v. Apodaca*, 512 F. App'x 509, 515 (2013) (finding that district court "did not err" when it relied on "case 'minutes'" from a California state court in determining that the defendant's prior offense qualified as a "controlled substance offense" under Section 4B1.1).

This Court also disagrees that it is precluded from relying on the information contained in Petitioner's indictment merely because the origin of the handwritten alterations is unknown. Petitioner has not provided, and the Court is unaware of, any reason to doubt that "Count Two" in the courtroom minutes refers to the revised listing, i.e., revised Count Two, in the indictment. Petitioner's bald assertion to the contrary falls considerably short of his burden under § 2255.

Having determined that Petitioner's courtroom minutes and indictment are permissible and reliable sources of information under *Shepard*, the next step under the modified categorical approach is to examine those documents in hopes of identifying the crime of conviction. Here, the courtroom minutes find Petitioner guilty of "Count Two" and the indictment identifies "Count Two" as feloniously and knowingly causing bodily injury to another person with a pistol—which is a violation of Tennessee Code Annotated § 39-2-101(b)(2) [Doc. 43-1 p. 5; Doc. 43-3]. Convictions under that provision categorically qualify as violent felonies because they invariably require an intentional and knowing use or threatened use of violent force, i.e., force capable of causing physical pain or injury. *See United States v. Arender*, 560 F. App'x 648, 649 (8th Cir. 2014) (finding that Tennessee aggravated assault conviction based on the display of a deadly weapon had "as an element the threatened use of physical force against another person").

Because at least three prior convictions remain predicate violent felonies under provisions unaffected by the *Johnson* decision, Petitioner is not entitled to relief from ACCA enhancement.

## IV. CONCLUSION

For the reasons discussed above, Petitioner's supplemented § 2255 motion [Docs. 29, 33, 43] will be **DENIED** and **DISMISSED WITH PREJUDICE**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed in forma pauperis on appeal. *See* Fed. R. App. P. 24. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Fed. R. App. P. 22(b).

**AN APPROPRIATE ORDER WILL ENTER.**

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
